UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDS LIFESCIENCES CORPORATION, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MERIL LIFE SCIENCES PVT. LTD., et al.,<br><br>Defendants. | Case No. 4:19-cv-06593-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PATENT INFRINGEMENT CLAIMS**<br><br>Re: Dkt. No. 22 |

Pending before the Court is defendants' Meril Life Sciences Pvt. Ltd. and Meril, Inc.'s (collectively, "Defendants") motion to dismiss plaintiffs' patent infringement claims. Dkt No. 22 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). After carefully reviewing and considering the parties' arguments, the Court **DENIES** Defendants' motion to dismiss.

**I.     BACKGROUND**

Plaintiffs Edwards Lifesciences Corporation and Edwards Lifesciences LLC (collectively, "Edwards") develop and supply devices for the treatment of heart disease, including artificial heart valves. Dkt. No. 1 ("Complaint") ¶ 5. Defendant Meril Life Sciences PVT. Ltd. ("Meril") is an Indian company that markets "Myval"-branded transcatheter aortic valves in India and Europe. *Id*. ¶ 27. Meril distributes Myval valves as part of the "Myval System." *Id*. ¶ 32. According to the Complaint, Meril does not have FDA approval to market the Myval System in the United States and has not yet sought such approval. *Id*. ¶ 33. Meril, Inc. ("Meril USA") is Meril's United States subsidiary. *Id*. ¶ 27.

In September 2019, officers of both Meril and Meril USA attended the 2019 Transcatheter

Cardiovascular Therapeutics Conference ("TCT Conference") in San Francisco, California. *Id*. ¶ 34. Meril exhibited its Myval System at the TCT conference and then publicized its exhibition on its LinkedIn page. *Id*. ¶ 35 (stating that Meril's booth at the conference "exhibited the MeRes100 and Myval TAVR system"). Edwards now claims that Meril infringed its patents under 35 U.S.C. §§ 271(a) and (g) by importing its patented invention and devices made using its patented process into the United States. *Id*. ¶¶ 35, 54-70. Edwards also claims that both Meril and Meril USA infringed its trademarks and engaged in unfair competition. *Id*. ¶¶ 71-86.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). To evaluate plausibility, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Id.* Materials outside of the pleadings may not be considered unless (1) they are incorporated into the complaint and their authenticity is not disputed, or (2) they are subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## III. DISCUSSION

Defendants argue that Edwards failed to state a claim for patent infringement because the only act of infringement alleged in the complaint—exhibiting the accused device at a medical conference—is protected by the safe harbor of 35 U.S.C. § 271(e)(1). Section 271(e)(1) provides:

> It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

2

Congress enacted section 271(e)(1) to streamline the process of obtaining FDA approval for generic drugs. *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1269, 1272 (N.D. Cal. 1991). Prior to the provision's enactment, clinical testing necessary to obtain FDA approval could not begin until after the expiration of the branded drug's patent term, artificially extending the patent monopoly and delaying the entry of generic drugs. *Id*. at 1272-73. To address this problem, section 271(e)(1) provided a safe harbor for otherwise infringing acts performed "solely for uses reasonably related to the development and submission of information to the FDA." *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1261 (Fed. Cir. 2008) (quoting 35 U.S.C. § 271(e)(1)). The safe harbor has been extended to medical devices and other products subject to FDA approval. *Eli Lilly and Co. v. Medtronic, Inc.*, 496 U.S. 661, 669-74 (1990). Section 271(e)(1) thus allows a competitor to begin obtaining FDA approval during the lifetime of a patent in order to begin selling the competing product immediately upon the patent's expiration.[1] *Proveris*, 536 F.3d at 1261.

The section 271(e)(1) exemption provides a "wide berth" for activities related to regulatory approval and "extends to all uses . . . that are reasonably related to the development and submission of *any* information under the FDCA." *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 202 (2005). Neither the stage of the research nor the outcome of the activities matters. *Id.* The safe harbor applies even if the clinical studies failed or the research results were never submitted to the FDA, as long as the researcher had "a reasonable basis for believing" that the activity would yield information appropriate for submission to the FDA. *Momenta Pharma., Inc. v. Amphastar Pharma., Inc.*, 686 F.3d 1348, 1356-57 (Fed. Cir. 2012). Nor does it matter that the accused infringer had additional, non-regulatory purposes for the activity—"[a]s long as the activity is reasonably related to obtaining FDA approval," the court "does not look to the underlying purposes or attendant consequences of the activity." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1030 (Fed. Cir. 1997); *see also Momenta Pharma., Inc. v. Teva Pharma. USA Inc.*, 809

---

[1] To ensure that the patent holder benefited from the entire term of the patent, Congress also extended patent terms by five years for a patented product "subject to a regulatory review period before its commercial marketing or use" where that use represented "the first permitted commercial marketing or use of the product." *Eli Lilly*, 496 U.S. at 671.

3

F.3d 610, 619 (Fed. Cir. 2015) ("The breadth of the exemption extends even to activities the 'actual purpose' of which may be 'promotional' rather than regulatory, at least where those activities are 'consistent with the collection of data necessary for filing an application with the [FDA] . . . for approval.").

Not all activities performed prior to FDA approval, however, fall within the exemption. *Amgen Inc. v. Int'l Trade Comm'n*, 565 F.3d 846, 852 (Fed. Cir. 2009). In *Amgen*, the Federal Circuit considered whether clinical experiments conducted after data had been submitted to the FDA qualified for the exemption. *Id*. at 852. Although regulatory approval had not been granted, and supplemental submission was possible, the court found that the exemption might not apply because evidence suggested that some studies were conducted at the request of the marketing department for purposes of brand recognition. *Id*. at 853-53. Citing *Merck* for the proposition that "[e]ach of the accused activities must be evaluated separately," the court determined that "factual questions of the purposes" of the challenged activities had to be evaluated regardless of the nature and stage of the activity. *Id*. (citing *Merck*, 545 U.S. at 200); *accord Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1339-41 (Fed. Cir. 2019) (affirming jury finding that drug batch manufacture during FDA approval fell outside the safe harbor because evidence showed it was not required and was intended for commercial inventory).

Defendants contend that the accused devices were imported into the United States for display at a medical conference in order to identify or recruit clinical investigators who could perform studies required by the FDA. Defendants cite three cases to argue that such conference displays constitute an "exempt" use under section 271(e)(1). First, in *Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, the Federal Circuit granted summary judgment in favor of the accused infringer who demonstrated a patented device at a medical conference allegedly to obtain clinical investigators for FDA trials. 982 F.2d 1520, 1523 (Fed. Cir. 1992). The court held that "[a]bsent some showing that Ventritex's purpose is disputed, such demonstrations constitute an exempt use reasonably related to FDA approval" because "device sponsors are responsible for selecting qualified investigators and providing them with the necessary information to conduct clinical testing." *Id*. Any incidental demonstrations to non-physicians did not defeat this finding

4

because "only physicians can implant the device." *Id.* Second, in two unpublished dispositions—*Intermedics, Inc. v. Ventritex Co., Inc.* and *Chartex International PLC v. M.D. Personal Products Corp.*—the Federal Circuit affirmed district courts' grant of summary judgment exempting conference displays based on *Telectronics*. 991 F.2d 808, 1993 WL 87405, at *3 (Fed. Cir. 1993); 5 F.3d 1505, 1993 WL 306169, at **2-3 (Fed. Cir. 1993). Edwards responds that the section 271(e)(1) safe harbor inquiry is "inherently factual" and not properly resolved on a motion to dismiss. The complaint alleges that Defendants imported the accused devices for commercial promotion of their sales in Europe and had not sought FDA approval in the United States—rendering any recruitment of clinical investigators unrelated to FDA approval.

The Court is not convinced that *Telectronics* and its progeny establish a "per se" rule that obviates the need for any further factual inquiry. As an initial matter, all three cases Defendants cite were decided on summary judgment, not motions to dismiss. *Telectronics* expressly qualified its holding by noting the absence of any "showing that Ventritex's purpose is disputed."[2] 982 F.2d at 1523. Moreover, the district court in *Intermedics* performed an extensive factual examination of the use of conference displays for recruitment, and based its conclusion in part on the lack of dispute. *See Intermedics*, 775 F. Supp. at 1287 (finding factually undisputed that medical conference help recruit investigators and determining that it was "reasonable" for defendants to believe the display would lead to generation of data for submission to the FDA). None of these cases dealt with a factual disagreement regarding whether medical conference displays reasonably led to recruitment of clinical investigators for FDA studies. The procedural posture of these cases thus cautions against deciding the applicability of the section 271(e)(1) exemption on a motion to dismiss.

Moreover, applying a "per se" rule exempting conference displays from infringement would conflict with the directive of *Merck* and *Amgen* that "[e]ach of the accused activities must be evaluated separately." *See Amgen*, 565 F.3d at 852. An activity may be "reasonably related" to

---

[2] *Telectronics* was decided prior to *Abtox*, which held that subjective purpose is irrelevant for the section 271(e)(1) exemption. The court in *Telectronics* appeared to have considered subjective purpose and may have found it dispositive.

regulatory submissions in some factual circumstances, but not others. *E.g.*, *Merck*, 545 U.S. at 205-06 (finding that scientific research may or may not fall within the exemption depending on the circumstances). Although Defendants are correct that subjective purpose is not dispositive, a commercial intent may nevertheless be probative of whether an activity is "reasonably related" to regulatory uses. *Amgen*, 944 F.3d at 1340 (finding no error where jury considered commercial intent as probative—but not dispositive—of whether activity related to FDA approval); *see also Amgen*, 565 F.3d at 852 (noting "factual questions of the purposes" of challenged activities in reversing safe harbor finding). Here, Edwards alleges that Defendants displayed the accused device in order to promote their commercial sales in Europe.[3] Complaint ¶¶ 33, 35. Neither the complaint nor any document subject to judicial notice establishes that Defendants recruited (or reasonably could have recruited) investigators for studies leading to information that could be submitted to the FDA. Accepting all factual allegations in the complaint as true and drawing inferences in favor of the plaintiff, Defendants have not shown that the section 271(e)(1) exemption applies.[4]

Defendants additionally argue that Edwards' lawsuit is premature because the FDA has not yet granted approval to the accused device, which may still change during the approval process. Although the Federal Circuit has previously exempted "*de minimis*" infringement from patent damages, the rule has been narrowly circumscribed to very specific circumstances. *See Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000). Now, even a single act of infringement suffices for Edwards to seek damages against the Defendants, even if that act is commercially minor and not likely to repeat in the future. Defendants' cited cases, which addressed the "case or controversy" requirement in declaratory judgment actions, do not apply because Edwards indisputably has standing to bring its lawsuit.

---

[3] Edwards requests judicial notice of additional documents suggesting a commercial intent behind Defendants' TCT conference display. Dkt. No. 27. Because this decision does not rely on these materials, the Court **DENIES** the request for judicial notice as moot.

[4] Defendants suggest that because they could not legally begin promoting their products prior to FDA approval, they could not have done so at the conference. The question of whether Defendants complied with the statute, however, has no bearing on the exemption. Moreover, the act of importation may constitute patent infringement even if no commercialization takes place.

Accordingly, the Court **DENIES** Defendants' motion to dismiss. The Court further **SETS** an initial case management conference for February 25, 2020, at 2:00 p.m. The parties need not submit a further joint case management statement.[5]

**IT IS SO ORDERED.**

Dated: February 18, 2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] Edwards sought leave to file a sur-reply containing certain allegedly confidential information. Dkt. No. 36. The Court denied the motion. Dkt. No. 38. Because the Court denied leave to file the sur-reply, the public's interest in accessing the cited documents is minimal. *See In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2013 WL 12335013, at *2 (N.D. Cal. Nov. 25, 2013). Accordingly, the Court **GRANTS** Edwards administrative motion to file under seal. Dkt. No. 35.

7