January 8, 2021

**VIA ELECTRONIC FILING ONLY**

Hon. Kandis A. Westmore
U.S. District Court, Northern District of California
Oakland Courthouse
1301 Clay Street
Oakland, CA 94612

Re:   <u>Edwards Lifesciences Corporation v. Meril Life Sciences Pvt. Ltd., et al.,
Case No. 4:19-cv-06593-HSG (KAW) - Joint Discovery Letter regarding Edwards'
Requests for Production of Documents</u>

Dear Hon. Kandis A. Westmore:

Per the Court's standing order, the parties hereby submit a joint discovery letter. The undersigned affirm that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct. The parties have attempted to meet and confer regarding discovery disputes pertaining to Meril's responses to Edwards' third set of requests for production of documents, nos. 48-241 (the "RFPs") via letter, email and telephone, including two meet and confer telephone calls on December 7, 2020 and December 31, 2020.

Edwards believes that, in light of the number of RFPs to which Meril has objected, it is impracticable to address all separately in this joint letter.  Nevertheless, in the interest of not overburdening the Court and adhering to the spirit of Judge Westmore's Standing Order, Edwards has attempted to concisely summarize the pertinent central issues, the resolution of which it believes would resolve the bulk of the parties' current disagreement.

Meril does not believe this joint letter complies with Judge Westmore's Standing Order, which requires that discrete discovery disputes be presented to the Court for resolution.  Edwards is asking the Court to address over 140 RFPs without even providing the Court with the text of those requests or Meril's responses.  Meril has brought this deficiency to Edwards' attention, but Edwards insists on submitting this letter to the Court.  It is impossible to address 140 RFPs in a couple of pages, but Meril is providing a response to the best of its ability.

Sincerely,

| | |
|---|---|
| <u>/s/ Carlo F. Van den Bosch</u> | <u>/s/ Melanie L. Mayer</u> |
| Carlo F. Van den Bosch | Melanie L. Mayer |
| Attorney for Edwards | Attorney for Meril |

**A.      RFP Nos. 49 and 100**

RFPs 49 and 100 seek "All raw data collected in connection with" the Myval-1 30-Person and the Myval-1 100-Person Study, respectively. In response to both of these RFPs, Meril states that it "will produce all non-privileged, non-protected documents relating to the '0% Device Related Mortality,' '100% Device Success,' '0% New Pacemaker,' and '0% Stroke' language, as plead in paragraph 46 of the [FAC], to the extent such documents exist in its possession, custody or control and can be identified upon a reasonable search." RFPs 49 and 100 and Meril's corresponding responses are attached as part of Exhibit A.  (Ex. A, p.1-6)

Edwards' Position[1]
Edwards alleges that Meril has misrepresented the safety and efficacy of its Myval heart valve based in part on the results of its 30-Person and 100-Person clinical studies. Since this litigation commenced, Meril has already admitted that it falsely reported some data from these studies. Despite the clear relevancy of this data, Meril has arbitrarily narrowed the scope of these requests by refusing to produce the raw data from these studies. "The scope of discovery under [FRCP] 26(b)(1) is broad." *Hoffman v. Jones*, 2019 WL 2448312, at *1 (E.D. Cal. June 12, 2019). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy is interpreted broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case . . . . [D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *Tucker v. AMCO Ins. Co.*, 2018 WL 6044917, at *3 (E.D. Cal. Nov. 19, 2018).

Meril cannot dispute that its Myval ads were based on the 30-Person study, or that the 100-Person study is an extension of its 30-Person study, and thus both studies bear directly on Edwards' claims. Moreover, Edwards intends to file an amended complaint which sets forth additional instances of Meril's false claims about Myval. For example, Meril has reported two different and inconsistent echocardiographic data sets for its 100-Person study, further underscoring the need for the raw data from both studies. Although Meril objects on grounds of undue burden, it fails to specify any facts in support thereof.  *See Vallejo v. Amgen, Inc.*, 903 F. 3d 733, 743 (8th Cir. 2018) ("courts require the party seeking to limit discovery to establish grounds for not providing the discovery that are specific and factual; the party cannot meet its burden by making conclusory allegations as to undue burden.").

Meril cannot cherry pick documents that only it deems relevant. *See Dep't of Fair Emp't & Hous. v. LSAC*, No. 12-cv-1830 (EMC) KAW, 2013 U.S. Dist. LEXIS 84205, at *11 (N.D. Cal. June 14, 2013) ("[I]t is improper for Defendant to pick and choose which responsive documents it will produce."). To support its claims, Edwards must be able to independently analyze the accuracy and methodology of the studies, and the underlying raw data is clearly discoverable. *See Wolpin v. Philip Morris, Inc.*, 189 F.R.D. 418, 429 (C.D. Cal. 1999) (ordering production of raw data underlying study of cancer patients as it "may assist defendant Philip Morris in determining the validity of the Fontham Study results."). Edwards is entitled to the raw data from

---

[1]      Due to the page limitations set forth in the Court's standing order, this letter addresses only some of the unresolved issues pertaining to the RFPs.  Edwards respectfully requests an opportunity to fully brief all of the unresolved issues for the Court's consideration.

these studies to prove that Meril's claims, *based on these studies*, are false and misleading. Meril has not agreed to produce the raw data from the studies, as Meril states below. Instead, Meril's counsel has represented that Meril may not be in possession of the raw data, as it claims the studies were conducted by third parties. Even then, the raw data is within Meril's "control," as it sponsored and commissioned these studies.

Meril's Position

Edwards argues that these RFPs are relevant to its unfair competition claim.  To properly allege an unfair competition claim, a plaintiff must actually identify the allegedly false or misleading statement.  In addition, "it is well-settled Ninth Circuit law that a claimant . . . must set forth . . . an explanation as to why the disputed statement was untrue or misleading when made." *Broadcom Corp. v. SiRF Tech., Inc.*, No. 08-cv-546-JVS (MLGx), 2009 WL 10672527, at *4 (C.D. Cal. Dec. 16, 2009); *Incorp. Servs., Inc. v. IncSmart.biz, Inc.*, No. 5:11-cv-04660 EJD, 2013 WL 394023, at *3 (N.D. Cal. Jan. 30, 2013). There is only one allegation in the operative First Amended Complaint (FAC; Dkt. 51) related to the 30-Person clinical study.  Paragraph 46 of the FAC alleges that Meril's statements in September 2019 that the 30-Person study demonstrated "100% Device Success," "0% Stroke," "0% New Pacemaker," and "0% Device Related Mortality" are allegedly false.  Meril has already agreed to produce ***all documents relating to*** these statements in its possession, including raw data.  Therefore, Meril is not "cherry pick[ing]."

Edwards' argument is that Meril should be forced to provide discovery about claims that are ***not in the FAC***, including unrelated data from the 30-Person study and data from a later 100-Person clinical study. But Edwards has ***no*** claims directed to these topics and tellingly does not point to **any** allegation in the FAC about these topics.  "Under the Lanham Act, the claimant must show that the defendant's accused statement was false at the time it was made." *Broadcom Corp. v. SiRF Tech., Inc.*, No. 08-cv-546-JVS (MLGx), 2009 WL 10672527, at *2 (C.D. Cal. Dec. 16, 2009).  It is undisputed that the 100-Person study was not even completed at the time of the allegedly false 2019 statements about the earlier 30-Person study, and it therefore cannot possibly be relevant to whether those statements were false at the time they were made. Edwards also argues that it should be allowed to take discovery about anything remotely related to "safety and efficacy."  Edwards is not correct.  A vague reference to "safety and efficacy" does not even state a claim for unfair competition, let alone provide a basis for a fishing expedition about a competitor's highly sensitive clinical trials. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (FRCP 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, No. 2:20-cv-00235-KJM-DB, 2020 WL 4937129, at *4 (E.D. Cal. Aug. 24, 2020) (plaintiff must "sufficiently put defendant on notice of the contours of its complaint such that allowing discovery will not unleash a fishing expedition").

Edwards next argues that it intends to file yet another amended complaint that will allegedly make this requested discovery relevant.  But the Court assesses what discovery is relevant based on the ***currently operative complaint***—not a different complaint that the plaintiff hopes to file in the future. *Johnson v. Hewlett-Packard Co*., 809 F.Supp.2d 1114, 1132 (N.D. Cal. 2011) (denying discovery that is "outside the scope of the operative Complaint").  In addition, Plaintiff cannot file yet another amended complaint because it cannot meet the requirements under FRCP 15 and it cannot show good cause under FRCP 16.

### B.     Requests Pertaining To Various Claims Made By Meril

RFPs 161-179 and 184-191 seek documents pertaining to statements about Meril's products, including statements that Myval has "0% Device Related Mortality" (No. 161), "0% New Pacemaker" (No. 163), "0% Stroke" (No. 165), "100% Device Success" (No. 167), "Low Device Related Mortality" (No. 169), "Low" incidence of "New Permanent Pacemaker" (No. 171), "Low Incidence of Stroke" (No. 173), "97% Device Success" (No. 175), and a 91% survival rate from the 100-Person study (No. 177), including the raw data supporting these claims. For each of these RFPs, Meril states that it "will produce all non-privileged, non-protected documents relating to the '0% Device Related Mortality,' '100% Device Success,' '0% New Pacemaker,' and '0% Stroke' language, as plead in paragraph 46 of the [FAC], to the extent such documents exist in its possession, custody or control and can be identified upon a reasonable search." RFP 173 and Meril's corresponding response are attached as part of Exhibit A. (Ex. A, p. 7-9.)

Edwards' Position
Meril again arbitrarily narrows the scope of these RFPs and agrees to produce only a subset of the requested and relevant documents. For example, in addition to seeking documents related to Meril's claims, these RFPs also seek the raw data related to each claim and Meril's adjudication protocol. Meril simply ignores this portion of Edwards' requests.

In many instances, Meril's response is non-responsive. For example, these RFPs seek documents related to Meril's express claims that Myval has "*low* device related mortality," "*low*" incidence of new permanent pacemaker and stroke, "97% device success," and that the 100-Person study has a 91% survival rate. Meril's agreement to produce documents related to its claims that Myval has *0%* incidence of device related mortality, stroke, and permanent pacemaker entirely evades these requests. Meril must produce documents related to its seemingly inconsistent claims that Myval has "*low*" incidence of death, stroke and pacemaker, including the underlying data for those claims, as these documents bear directly on Edwards' claims that Meril falsely represented the safety and efficacy of Myval by claiming that it had "100% device success," etc.

Finally, Meril's bold position that Edwards is not entitled to discovery on issues that Edwards has not expressly pleaded in its complaint is misplaced.  Edwards is entitled to discovery on these issues because they are clearly relevant to the parties' claims and defenses.  Edwards has no obligation to plead every issue for which it seeks discovery.  *Cf. Ng v. Snow*, No. SACV060578AGPLAX, 2008 WL 11357794, at *2 (C.D. Cal. May 20, 2008) ("Under the liberal standards of notice pleading Plaintiff was not required to include each of the 33 alleged acts of discrimination or retaliation in his Complaint, and is not limited at the summary judgment stage to the facts as pleaded in his Complaint.").  Moreover, Meril cannot deny that the 100-Person study was an extension of the 30-Person study, and hence is relevant to the claims here.

Meril's Position
As explained above, Meril has already agreed to produce ***all documents relating to*** the "100% Device Success," "0% Stroke," "0% New Pacemaker," and "0% Device Related Mortality" statements in 2019 related to the **30**-Person Study, including raw data.  The FAC includes no claims relating to other aspects of the 30-Person Study, the *later* **100**-Person study, or the 2020 Myval Product Brochure (RFPs 169-178).  For an unfair competition claim, it is only relevant

whether a statement is false at the <u>time it was made</u>. Even if additional data later becomes available that causes a party to amend its earlier statements, that has no bearing on whether the earlier statements were false <u>when made</u>. Therefore, even if data from the *later* Myval 100-Person Study showed 97% device success or a 91% survival rate, this later data is not at all relevant to whether Meril's *earlier* statements about the 30-Person Study (e.g., which showed 100% device success) were false <u>at the time</u>. Edwards is attempting to use this case to get access to its competitor's highly sensitive, later clinical trial data, which is simply not relevant.

### C.  Requests Pertaining To Meril's Adoption and Use of PARTNER THE FUTURE

RFPs 209-230 seek documents related to Meril's adoption and use of the phrase PARTNER THE FUTURE. In its response to each of these RFPs, Meril states that it "will produce all . . . non-privileged, non-protected documents [(1)] showing its use of the phrase 'partner the future' at the 2019 TCT Conference and on www.merillife.com; (2) . . . showing its process of selecting to use the phrase 'partner the future' and Meril employees involved in that process; and (3) . . . showing any knowledge of Edwards' PARTNER trademark by Meril employees involved in selecting to use the phrase 'partner the future,' to the extent such documents exist in its possession, custody or control and can be identified upon a reasonable search." RFP 212 and Meril's corresponding response are attached as part of Exhibit A. (Ex. A, p. 10-12.)

<u>Edwards' Position</u>
Meril's responses have narrowed the scope of RFPs pertaining to the trademark infringement claim based on Meril's use of PARTNER THE FUTURE. Meril's responses evade a number of the RFPs, including those seeking documents related to Meril's first use in commerce of its mark (No. 211), all marks Meril considered before selecting PARTNER THE FUTURE (No. 212), Meril's search and investigational efforts into potential use of its mark (No. 213), legal opinion letters (No. 214), all products and services offered under the mark (No. 215), its marketing channels, consumer demographics, geographic markets, and marketing expenses (Nos. 217-221), and documents that mention or relate to Edwards' registered PARTNER mark (No. 224). These RFPs bear directly on Edwards' claims and Meril should produce all such documents. Meril's claim that documents to RFP 215 do not exist is based on its argument that it uses PARTNER THE FUTURE fairly; Meril may not deny discovery because it believes it has a valid defense.

<u>Meril's Position</u>
It is impossible for Meril to address all 22 RFPs in one paragraph.  Taking RFP 215 as an example, this RFP requests documents that simply do not exist, and Meril has explained that in its discovery responses, but Edwards is filing this motion to compel non-existent documents anyway.  As the FAC acknowledges, Meril only had a couple of signs at a 2019 TCT Conference where Meril was recruiting clinical trial investigators; those signs invited clinicians to "partner the future" with Meril.[2]  FAC, ¶52.  The Court has already found that Meril did not sell, or even offer to sell, its Myval device at the TCT Conference.  Dkt. 98 at 5, 10 ("Meril did not sell or offer to sell the device" at the TCT Conference).  Therefore, Meril has no documents regarding "products and services offered under the mark," as requested in RFP 215.  This is not because

---

[2] Meril has filed a motion to dismiss Edwards' trademark infringement claim (Dkt. 107) because it is not trademark infringement to use the word "partner" according to its ordinary, English meaning (as Meril did at the TCT Conference), and not as a trademark.  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (Lanham Act was not "meant to deprive commercial speakers of the ordinary utility of [] words").

the trademark claim fails due to Meril using "partner the future" according to its common, English meaning (which it true; Dkt. 107); this is because, even if "partner the future" was used as a trademark at the TCT Conference, the Court has already determined Meril did not sell or even offer to sell products there. Therefore, Meril does not have documents about "products and services offered under the Mark" (RFP 215), its "marketing channels" (RFP 217), "consumer demographics" (RFP 218), "geographic markets" (RFP 219), or "monthly revenue" (RFP 221) for "products and services offered under the…Mark" because Meril did not sell, or even offer to sell, its device at the Conference where it used the phrase "partner the future." With respect to RFP 212, Meril explained in its response that it has no documents responsive to this request.

### D.     Meril's Document Production

Edwards' Position
To date, Meril has produced 38 documents in response to the RFPs. The Court should order Meril to promptly complete its production of documents responsive to the RFPs. Edwards served its RFPs on September 4, 2020. Although Meril's responses were due on October 5, Meril failed to serve its responses by this deadline, relying instead on its unilateral interpretation that Judge Gilliam's partial stay order (Doc. No. 71) stayed all discovery. At the November 3, 2020 scheduling conference, Judge Gilliam disagreed with this interpretation and ordered Meril to serve its responses immediately. (*See* Doc. No. 104 (responses due November 3, 2020).) Edwards in good faith agreed to extend this deadline to November 13. Although over 4 months have passed since Edwards served its RFPs, Meril has produced only 38 documents, consisting of publicly available articles from EuroIntervention and European Heart, jpgs of the PARTNER THE FUTURE mark, and an undated PowerPoint presentation about Meril. During meet and confer, Meril's counsel stated she was not aware whether Meril would produce more documents.

Meril's Position
Fact discovery closes September 3, 2021.  Dkt. 106. Edwards' unusual request that this Court set aside the district court's scheduling order and instead order Meril to immediately "complete its production" is unsupported by case law and based only on misrepresentations.  First, Edwards misrepresents that Meril has only produced 38 documents. Meril has in fact produced over 1,400 documents.  The referenced 38 documents are just those produced after the ***third set*** of RFPs, but responsive documents were produced as part of Meril's earlier productions as well.  Edwards also misrepresents that Meril delayed for over 4 months. Not so. On June 8, 2020, the district court stayed "all deadlines in the scheduling order…after…August 7, 2020" and ordered that "all further obligations…are stayed until further order of the Court."  Dkt. 71.  Notwithstanding that order, Edwards served over 200 RFPs on September 4.  The parties disagreed about the effect of the June 8 order on Meril's deadline to respond, and Edwards moved to compel.  Dkt. 95.  However, this Court explained that Edwards must seek clarification from the district court. Dkt. 97. Edwards did not.  After granting Meril's motion to dismiss the patent infringement claims (Dkt. 98), the Court held a conference, but never disagreed with Meril's interpretation of the order.  During that oral hearing, Meril understood the Court to set a November 23 deadline for Meril to respond, which Edwards' proposed in the CMC statement.  Dkt. 102.  When the text order from the hearing reflected a November 3 deadline (the very same day as the hearing), the parties agreed on a November 13 deadline.  Meril timely responded, produced additional documents, and supplemented its responses in an effort to avoid discovery disputes.  There is simply no basis to modify the scheduling order and impose a unilateral deadline for Meril.