UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDS LIFESCIENCES CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERIL LIFE SCIENCES PVT. LTD., et al.,<br><br>Defendants. | Case No. 19-cv-06593-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO PRECLUDE CERTAIN TESTIMONY OF ROBERT VIGIL AND GRANTING AND DENYING ASSOCIATED ADMINISTRATIVE MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 207, 208, 218, 228, 235 |

Pending before the Court is Plaintiffs Edwards Lifesciences Corporation's and Edwards Lifesciences LLC's (collectively "Edwards" or "Plaintiffs") motion to preclude portions of the testimony of Robert Vigil, the damages expert for Defendants Meril Life Sciences Pvt. Ltd. and Meril, Inc. (collectively "Meril" or "Defendants"). Dkt. No. 208 ("Mot."). This motion is fully briefed.[1]  *See* Dkt. Nos. 236 ("Opp."), 238 ("Reply"). The parties have also filed associated administrative motions to seal ("Motions to Seal") portions of their briefs and exhibits. Dkt. Nos. 207, 218, 228, 235. For the following reasons, Plaintiffs' motion to preclude portions of the testimony of Robert Vigil is **GRANTED IN PART and DENIED IN PART** and their Motions to Seal are **DENIED** and **GRANTED IN PART and DENIED IN PART.**

I. **BACKGROUND**

Because this case has been actively litigated, the Court limits its review of the factual and procedural background to that relevant to the pending motions. Defendants are an India-based, global medical device company that created a "Myval" branded transcatheter heart valve. Dkt.

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).

No. 98 at 1. Plaintiffs supply medical devices for the treatment of heart disease, including artificial heart valves. *Id.* at 2. Among their best-known products are their "SAPIEN®" transcatheter prosthetic heart valves. *Id.* On October 14, 2019, Plaintiffs brought the current lawsuit against Defendants alleging patent infringement, trademark infringement, unfair competition, and false advertising claims relating to the parties' transcatheter heart valves. Dkt. No. 1 at 25-31.

On April 6, 2020, Plaintiffs filed an amended complaint with claims for: (1) Statutory and Common Law Trademark Infringement in violation of 15 U.S.C. § 1114 and the common law; (2) Unfair Competition in violation of 15 U.S.C. § 1125(a); and (3) Unfair Competition and False Advertising in violation of §§ 17200 and 17500 of the California Business and Professions Code. Dkt. No. 51 (or "FAC") ¶¶ 96-111. For their statutory and common law trademark infringement claim, Plaintiffs allege that Defendants infringed their PARTNER trademark by using the phrase "Partner the Future" at the 2019 TCT Conference in San Francisco; at the 2019 EuroPCR Conference in Paris, France; and in promotional materials related to those two events. *Id.* ¶¶ 20-22, 49-52. For their Lanham Act and California unfair competition law (UCL) claims, Plaintiffs allege that one of Defendants' sponsored presentations at the 2018 TCT Conference in San Diego contained incorrect data, and that Defendants made several false or misleading statements at or associated with their presence at the 2019 TCT Conference in San Francisco, the 2019 and 2020 EuroPCR Conferences in Paris, France, and the 2019 London Valves Conference in London, England. *Id.* ¶¶ 41-52.

Both parties intend to call expert witnesses to testify about damages. Plaintiffs' expert witness, Michael Wagner, submitted his report on August 6, 2021, estimating damages for the alleged trademark infringement and alleged false advertising. *See* Dkt. No. 208-2 ("Wagner Rpt."). On August 20, 2021, Defendants served Dr. Robert Vigil's rebuttal damages report, in which he contends that Mr. Wagner's analysis "suffers from numerous flaws and unsupported assumptions that render his opinion unreliable and vastly overstated." *See* Dkt. No. 208-3 ("Vigil Rpt.") ¶ 40. Dr. Vigil states that he assumes for purposes of his report that Defendants are liable for trademark infringement and false advertising, but he nevertheless concludes that Plaintiffs did

2

1    not suffer any economic harm and finds no basis to award them any damages. *Id.* ¶¶ 2, 40. He
2    further opines that if a trier of fact finds that damages are due, they would be no more than
3    $112,292 for the trademark infringement claim, $93,888 for the false advertising claim, and no
4    more than $152,180 for both claims because the damages overlap. *Id.* ¶¶ 5, 70. Plaintiffs now
5    move to preclude portions of Dr. Vigil's testimony under Federal Rule of Evidence 702.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 contemplates a "*broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted). Under the reliability requirement, the expert testimony must have a "reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564.

3

### III. DISCUSSION

#### A. Motion to Preclude Expert Testimony

##### i. References to Underlying Evidence

Plaintiffs ask the Court to preclude Dr. Vigil from testifying about certain topics identified in his rebuttal report for four primary reasons. First, Plaintiffs contend that much of Dr. Vigil's testimony would be unhelpful to the jury because it is not based on specialized expertise and instead regurgitates testimony from other witnesses. *See* Mot. at 2.

"[C]hallenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony." *Pinterest, Inc. v. Pintrips*, 2015 WL 2268498 at *1 (N.D. Cal. May 14, 2015); *see also Space Data Corp. v. Alphabet Inc.*, 2019 WL 2603285 at *4 (N.D. Cal. June 25, 2019) (permitting damages expert to rebut opposing expert's methodology, "such as opining on what [opposing expert] failed to properly account for in forming her opinions or solidifying her assumptions"). *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.* provides a useful framework for applying these principles here. 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ("*Robroy*"). Like this one, that case involved an economist's rebuttal expert testimony in a false advertising case. *Id.* at *2. The *Robroy* court prohibited the expert from "simply parrot[ing] deposition evidence and exhibits produced during the pretrial process" out of concerns that she would: (1) mislead the jury by putting the "imprimatur of her expertise" on the statements of other witnesses; and (2) not be amenable to meaningful cross-examination, since her opinions on the topic would not be the product of her own expertise. *Id.* at *10-11. However, the court allowed the expert to highlight both the assumptions underlying the opposing expert's damages estimates and the lack of evidence supporting those assumptions. *Id.*

The Court finds the *Robroy* approach persuasive. Dr. Vigil may critique the assumptions and data (or lack thereof) underlying Mr. Wagner's report and testimony. Contrary to Plaintiffs' view, the Court finds that he generally does so when testifying as to the extent of (and consequent impact on the reasonable measure of damages based on): (1) consumer exposure to, and confusion by, the "Partner the Future" phrase and alleged false statements; (2) consumers' changed purchasing decisions; (3) Plaintiffs' harm to goodwill or reputation; (4) Plaintiffs' development

4

and promotional expenses; and (5) Plaintiffs' corrective advertising costs. *See* Dkt. No. 208-3. As such, the Court will not categorically preclude Dr. Vigil from testifying as to those topics. But the Court also will not allow Dr. Vigil to simply summarize evidence produced in the pretrial process, as he appears to do in paragraphs 44; 46(a); 48(b)(i); 48(c); 48(e); 48(f); and 74 of his report. *See id.* While Dr. Vigil may of course state the information upon which he relied to conduct his economic analysis, the Court will ensure at trial that he does not go further and "put the imprimatur of [his] expertise" on the statements of other witnesses. *Robroy*, 2017 WL 1319553, at *11.

### ii. The Parties' Foreign Lawsuits

Plaintiffs also allege that Dr. Vigil's testimony about the parties' foreign lawsuits lacks specialized expertise and would be unhelpful to the jury. *See* Mot. at 14. The Court agrees that Dr. Vigil's testimony about the "undue harm" Defendant would suffer if Plaintiff collects damages in this case and the European cases is inappropriate. *See* Vigil Rpt. ¶ 80. For one, it lacks specialized expertise. It does not take a Ph.D. in economics to argue, as Dr. Vigil does, that because the parties are also engaged in litigation in Europe, "allowing Edwards to claim monetary remedies based upon sales outside the U.S. in this matter could allow Edwards to collect claimed damages multiple times." *Id.* In addition, part of this opinion improperly imports an assertion as to the governing law.[2] *See id.* ("I also understand from counsel that claiming any sales in Europe as damages in this matter is inappropriate as a legal matter."). Dr. Vigil may not testify about whether damages from European sales are legally appropriate in this case or the extent to which those damages would cause Defendants undue harm.

However, for the reasons explained above, the Court will allow Dr. Vigil to critique the assumptions or alleged lack of data underlying Mr. Wagner's damages estimate. In the Court's

---

[2] Relatedly, Plaintiffs also contend that Dr. Vigil's testimony about Edwards' development and promotional expenses is an improper attempt to draw legal distinctions between the facts in this case and the Ninth Circuit's opinion in *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012). *See* Mot. at 12-13. The Court finds that Dr. Vigil's testimony instead critiques the assumptions and alleged lack of data underlying Mr. Wagner's calculation of Edwards' expenses. He is not precluded from testifying on this topic.

view, Dr. Vigil does so when he contends that Mr. Wagner has failed to show a nexus between the European sales, which Mr. Wagner claims constitute damages flowing from a Lanham Act violation, and the alleged misconduct. *See id.* ("From an economic perspective, Mr. Wagner's 'alternative' calculation of Meril's sales based on all European sales is inappropriate and significantly overstated as he has provided no nexus between all European sales, if any, and the alleged misconduct.").

### iii. Dr. Vigil's Assumption of Liability

Plaintiffs also argue that Dr. Vigil goes beyond his role as a damages expert by contradicting his professed assumption of liability. *See* Mot. at 2. Defendants respond that Plaintiffs have conflated the separate legal concepts of liability and economic damages, and claim that Dr. Vigil assumes liability and instead analyzes the extent of economic damages. *See* Opp. at 1. The Court generally agrees with Defendants, except for Paragraph 46(a) of Dr. Vigil's report.

There, in addition to simply repeating statements by another witness, Dr. Vigil functionally disputes liability when he states his "understanding" that several of Defendants' statements that are allegedly false and misleading "were, in fact, correct when made." Vigil Rpt. ¶ 46. Of course, the falsity of Defendants' statements is a central element of Plaintiffs' Lanham Act case. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."). And falsity is measured at the time the statement was made. *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008). Putting these together, the Court does not understand how Dr. Vigil can at the same time assume that Plaintiffs have met their burden of proving that Defendants' statements were "literally false" or "literally true but likely to mislead consumers" and testify, on the other hand, that Defendants' statements were unlikely to confuse consumers because they were correct when made. At trial, Dr. Vigil may critique Mr. Wagner's testimony and analyze the extent of consumer exposure, but the Court will not allow Defendants to use him to relitigate central elements of Lanham Act liability.

### iv. Meril's Profit Margin

Finally, Plaintiffs claim that Dr. Vigil's opinion regarding Meril's profit margin for the Myval heart valve is unreliable and insufficient to meet Defendants' legal burden of proving which costs should be deducted from Defendants' gross revenue when determining the amount of profits to disgorge.[3] The Court finds that Plaintiffs' challenge goes to the weight of the evidence rather than its admissibility. Whether Dr. Vigil's testimony is persuasive is a separate question from whether Dr. Vigil should be allowed to testify at all. And none of the cases Plaintiffs cite in support of their argument involved motions to exclude witnesses under Rule 702.[4] The Court will not preclude Dr. Vigil from testifying about Meril's profit margin on this basis.

### B. Motions to Seal

The parties have also filed administrative motions to seal portions of their briefs and exhibits related to Plaintiffs' Motion. Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies

---

[3] Plaintiffs also argue that the Court should preclude Dr. Vigil from testifying as to information which Defendants refused to provide during discovery. *See* Mot. at 15. Plaintiffs state that they separately intend to move to exclude Defendants from proffering any evidence of their costs, including Dr. Vigil's opinion on Meril's profit margin, for failure to produce this information during discovery under Rule 37(c)(1). *See id.* n.6. The Court agrees that a Rule 37(c)(1) motion is the proper manner of resolving this dispute and will consider Plaintiffs' motion if one is filed.

[4] *See, e.g.*, *Bambu Sales. Inc. v. Ozak Trading. Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (Motion for Summary Judgment); *H-D Mich., Inc. v. Biker's Dream, Inc.*, 1998 WL 697898, at *6-10 (C.D. Cal. Jul 28, 1998) (Motion for Summary Judgment); *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315-1316 (S.D. Fla. 1998) (Post-judgment Hearing); *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, 2014 WL 47465, at *24 (S.D.N.Y. Jan. 6, 2014) (Bench Trial Judgment).

7

favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted).

Records attached to non-dispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotation omitted).  This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed.  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c).  "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

The documents at issue in the pending motions to seal relate to Plaintiffs' non-dispositive motion to preclude expert testimony so the Court will apply the lower good cause standard.

### i. Dkt. Nos. 207, 218

Plaintiffs seek to seal the entirety of Exhibits 1-3 to their Motion to Preclude Certain Testimony of Robert Wagner.  *See* Dkt. No. 207.  Exhibit 1 consists of excerpts from the expert report of Mr. Wagner, Exhibit 2 consists of excerpts from the expert report of Dr. Vigil, and Exhibit 3 consists of excerpts from the deposition transcript of Dr. Vigil.  *Id.*  Plaintiffs contend that the entirety of Exhibits 1 and 2 contain confidential business and financial information related to their intelligence on competitors, marketing strategies and costs, and development and promotion expenses by product line.  *See* Dkt. 207-2.  For their part, Defendants contend that Exhibits 1 and 2 contain the costs and expenses associated with their attendance at certain conferences and costs and profit margins related to their Myval device.  *See* Dkt. No. 218-1.

Having reviewed Exhibits 1 and 2 to the Motion, the Court recognizes that significant portions of both exhibits contain confidential cost, expense, and profit information.  There is good cause to seal that information.  *See Gearsource Holdings, LLC v. Google LLC*, 2020 WL 3833258, at *15 (N.D. Cal. July 8, 2020) ("Examples of trade secrets include pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage*."); Asetek Danmark A/S v. CMI USA, Inc.*, 2015 WL 12964641, at *2 (N.D. Cal.

2015) (holding compelling reasons existed to seal calculations "derived from sales data on [party's] infringing products"). However, the Court is not convinced that Exhibits 1 and 2 need to be sealed in their entirety because the reports contain information that is not confidential. Though the redactions to these exhibits may be extensive, particularly for Mr. Wagner's report, they need not be total. *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) (reversing a district court's order to seal that "inappropriately extended to non-confidential material"). Accordingly, the Parties are directed to file a new targeted request to seal only the specific, identified portions of Exhibits 1 and 2 that contain confidential estimates of costs and profit margin.

As to Exhibit 3, Defendants only seek to seal limited portions that include descriptions of Meril's estimate of costs and profit margin associated with Meril's Myval product and Meril's strategy in calculating costs associated with Meril's Myval product. *See id.* Having reviewed Exhibit 3, the Court denies Plaintiffs' motion to seal the entire deposition transcript, *see* Dkt. No. 207, but grants Defendants' request to seal the identified portions that include confidential estimates of costs and profit margin (188:14; 188:17-23; 189:19-190:24). *See* Dkt. No. 218.

In summary, Dkt. No. 207 is **DENIED** and Dkt. No. 218 is **GRANTED IN PART and DENIED IN PART**.

### ii. Dkt. Nos. 228, 235

Defendants' motion seeks to seal the entirety of Exhibit 2 to Meril's Opposition, as well as portions of Exhibit 1 and Exhibit 3 to the Opposition, and portions of the Opposition Brief itself. Dkt. No. 228. Plaintiffs seek to seal the entirety of Exhibit 2 to the Opposition, as well as certain portions of Exhibit 3 to the Opposition, and portions of the Opposition itself. Dkt. No. 235.

Exhibit 1 to the Opposition consists of excerpts from the deposition transcript of Dr. Vigil. *See* Dkt. No. 229-2. Defendants contend that the information it seeks to seal in Dr. Vigil's deposition transcript "reference[s] the Wagner report." *See* Dkt. No. 228-1. This is insufficient. Because the portions of the transcript that Defendants' motion seeks to seal do not reference proprietary or confidential information, the Court finds that there is not good cause to seal portions of Exhibit 1.

Exhibit 2 to the Opposition consists of excerpts from the expert report of Michael Wagner. *See* Dkt. No. 229-3. As before, Plaintiffs seek to seal the excerpt of Mr. Wagner's report in its entirety. For the reasons explained above, this request is denied.

Exhibit 3 to the Opposition consists of excerpts from the deposition transcript of Mr. Wagner. *See* Dkt. No. 229-4. Although Defendants' motion seeks to redact almost the entirety of the transcript, Plaintiffs ask only to seal a subset of the portions that Defendants identified in their motion. *See* Dkt. No. 235-1 at 2. Plaintiffs contend that this subset contains their "highly sensitive business and financial information" that could cause harm if publicly disclosed. *Id.* at 3. The Court finds good cause to seal the portions of Exhibit 3 that contain Plaintiffs' intelligence on competitors and confidential market data. The Court accordingly denies Defendants' motion to redact the entire deposition transcript, *see* Dkt. No. 228, but grants Plaintiffs' request to seal the identified portions that contain Plaintiffs' intelligence on competitors and confidential market data. *See* Dkt. No. 235.

Finally, the parties seek to seal portions of the Opposition Brief itself. Dkt. No. 235. Again, Plaintiffs propose to seal only a subset of the portions of the Opposition that Meril identified in their administrative motion to file under seal. *See* Dkt. No. 235-1 at 2. The Court rejects Plaintiffs' position that the Opposition Brief contains "highly sensitive business and financial information." *See* Dkt. No. 235-2. Since the portions of the Opposition identified by Plaintiffs simply summarize Dr. Vigil's critiques of Mr. Wagner's methodology and do not themselves contain confidential business information, the Court finds that neither party has shown good cause to seal portions of the Opposition brief itself.

To summarize, Dkt. No. 228 is **DENIED** and Dkt. No. 235 is **GRANTED IN PART and DENIED IN PART.**

## IV. CONCLUSION

Plaintiffs' Motion to Preclude Certain Testimony of Robert Vigil is **GRANTED IN PART and DENIED IN PART.** Dr. Vigil may not testify about whether Plaintiffs' alleged damages from European sales are legally appropriate in this case or the extent to which those damages would cause Defendants undue harm. He also may not testify that Defendants' alleged

misstatements were correct when made.  Dr. Vigil is not categorically barred from testifying about the matters referenced in paragraphs 44; 46(a); 48(b)(i); 48(c); 48(e); 48(f); and 74 of his report, but the Court will ensure at trial that Dr. Vigil only does so while adding independent and specialized expertise.

The Motions to Seal are **DENIED** and **GRANTED IN PART and DENIED IN PART.** Specifically, Dkt. Nos. 207 and 228 are **DENIED** and Dkt. Nos. 218 and 235 are **GRANTED IN PART and DENIED IN PART.**  Within seven days of the filing of this Order, the parties are directed to file public versions of the documents identified above that comport with this Order.

**IT IS SO ORDERED.**

Dated:  11/18/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge